IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY EDGERTON, | : | Case No. 3:12-CV-0191 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| WILKES-BARRE HOME CARE SERVICES, LLC, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

January 13, 2014

For the reasons that follow, the motion for summary judgment of defendant Wilkes-Barre Home Care Services is granted, in accordance with the accompanying Order of this date.

**I.  General Background**

On January 31, 2012, plaintiff Nancy Edgerton filed a complaint alleging that defendant Wilkes-Barre Home Care Services (hereinafter, "WBHCS") discriminated against her because of her age. (ECF No. 1). Specifically, Ms. Edgerton, born 1955, asserted that she was fired by WBHCS because of her age and replaced by someone younger, in violation of the federal Age Discrimination in Employment Act (hereinafter, "ADEA"), which prohibits employers from "discharg[ing] any individual . . . because of such individual's age," 29 U.S.C. §

623(a)(1), and Pennsylvania's Human Relations Act (hereinafter, "PHRA"), which likewise prohibits "any employer because of the . . . age . . . of any individual . . . to discharge from employment such individual," 43 P.S. § 955(a).[1]

The parties completed discovery and WBHCS filed a motion for summary judgment on January 15, 2013. (ECF Nos. 20, 32).

## II. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" where it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all reasonable inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." Id.

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or

---

[1] The Court has federal question and diversity jurisdiction over Ms. Edgerton's claims.

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Thus, where the moving party's motion is properly supported and his evidence, if not controverted, would entitle him to judgment as a matter of law, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. In the face of the moving party's evidence, the nonmoving party's mere allegations, general denials or vague statements will not create a genuine factual dispute. See Bixler v. Cent. Pennsylvania Teamsters Health & Welfare Fund, 12 F.3d 1292, 1302 (3d Cir. 1993). Only citation to specific facts is sufficient. Anderson, 477 U.S. at 250.

Where the nonmoving party has had adequate time for discovery and will bear the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment is warranted. Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986).

Having offered this encapsulation, the Court would normally stop here. The Court continues, however, because Ms. Edgerton's primary response to numerous factual averments of WBHCS goes as follows: "Defendant's summary judgment motion cannot be based upon testimony of interested witnesses or any evidence a jury is not required to believe," citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u> 530 U.S. 133 (2000). (<u>See</u> Pl. Facts, Feb. 15, 2013, ECF No. 29 ¶¶ 23, 44, 47, 48, 49, 50, 55, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 84, 85, 86, 89, 90, 91, 92, 93, 95, 96, 97, 98, 99, 103, 104, 105, 106, 108, 109, 110, 111, 112, 113, 114, 116, 117, 118, 119, 127). In other words, Ms. Edgerton posits that a "genuine dispute" arises any time that WBHCS bases a material factual assertion on testimony that a jury could possibly disbelieve. WBHCS disagrees, quoting <u>dictum</u> from the United States Court of Appeals for the Third Circuit's decision in <u>Luaren W. v. DeFlaminis</u>, 480 F.3d 259 (3d Cir. 2007): "The fact is that in considering a motion for summary judgment the court should believe uncontradicted testimony unless it is inherently implausible even if the testimony is that of an interested witness." <u>Id.</u> at 272.

The Court respectfully believes both parties's statement of the law is incomplete. The Third Circuit's opinion in <u>Schoonejongen v. Curtiss-Wright</u>

4

Corp., 143 F.3d 120 (3d Cir. 1998), considers the issue at length, and reasons that, contrary to Ms. Edgerton's position, a nonmoving party cannot defeat summary judgment by raising the mere possibility that the jury may disbelieve a witness's testimony. Id. at 130. See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). To successfully oppose a summary judgment motion, the nonmoving party must, rather, point to <u>circumstances revealed by the record as a whole</u> that might cause a reasonable jury to doubt the facts (supported by testimony) asserted by the movant. Schoonejongen, 143 F.3d at 130. The nonmoving party does not need to show that the testimony underlying the moving party's factual assertions is "inherently implausible" (whatever that means), but she must supply some basis upon which a reasonable mind might find it implausible.

Where "the nonmoving party has presented no evidence or inferences that would allow a reasonable mind" to doubt the facts asserted by the moving party, then "summary judgment is particularly appropriate" because the nonmoving party has failed to show that the facts are "genuinely" disputed. Id. Accordingly, Ms. Edgerton's repeated bald assertions that a jury is not required to believe testimony favorable to WBHCS do not put facts in genuine dispute and will not defeat

5

WBHCS's summary judgment motion.

## III. Substantive Legal Framework

In the absence of direct evidence of discrimination against her, Ms. Edgerton can prevail only if her evidence meets the requirements for plaintiffs under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Adapted to the context of the ADEA/PHRA (McDonnell Douglas involved racial discrimination):

> Under McDonnell Douglas, the plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action. If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination. At all times, however, the burden of persuasion rests with the plaintiff.

Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009) (citations omitted).

The Court rejects Ms. Edgerton's assertion that she can make out her prima facie case without showing that she was replaced by an employee "sufficiently younger" to support the inference that WBHCS fired her because of discriminatory

6

animus. (Pl. Opp'n Br., Feb. 15, 2013, ECF No. 28 at 13 (hereinafter, "Pl. Opp'n Br.")). In addition to including the "sufficiently younger" requirement in its description of the law, see supra, the Third Circuit has expressed a willingness to hold that a plaintiff's failure to show that she was replaced by a sufficiently younger worker dooms her prima facie case. See Narin v. Lower Merion Sch. Dist., 206 F.3d 323, 333 n.9 (3d Cir. 2000) (Rosenn, J.) ("Moreover, we also think that . . . Narin failed to establish a prima facie case of discrimination. Lower Merion hired Rita Lerario, age 49, and Frank Panaia, age 54 . . .. Because these individuals' ages do not differ materially from Narin's [(age 56)], we cannot conclude that Lower Merion ultimately filled the . . . positions with someone sufficiently younger to permit an inference of discrimination."). In light of these precedents, the Court will hold Ms. Edgerton to the "sufficiently younger" requirement.

The Court recognizes, however, that the requirement is not a straightjacket. The Third Circuit has not adopted a "brightline rule" with regard to what constitutes a sufficient age difference, although a gap of fewer than five years should be insufficient in the absence of other circumstances suggesting age discrimination. Steward v. Sears Roebuck & Co., 231 F. App'x 201, 209 (3d Cir. 2007) (citing cases); Fitzpatrick v. Nat'l Mobile Television, 364 F. Supp. 2d 483,

489-92 (M.D. Pa. 2005) (Munley, J.) (plaintiff failed to make out prima facie cases where his job duties were assumed by employee four years younger); Gutknecht v. Smithkline Beecham Clinical Labs., Inc., 950 F. Supp. 667, 672 (E.D. Pa. 1996) ("Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made."). But see Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 355-57 (3d Cir. 1999) (explaining that relevant circumstances may render the identity of plaintiff's replacement irrelevant to question of whether plaintiff was victim of discrimination).

## IV. Facts

The Court recites only those few facts necessary to decide the motion. Where Ms. Edgerton supports her assertions in accordance with Fed. R. Civ. P. 56(c), the Court accepts them as true even though WBHCS may adduce contrary evidence.

WBHCS operates a "home health and hospice agency" in Wilkes Barre, Pennsylvania, operating under the names Visiting Nurses Association or VNA. (Def. Facts, Jan. 15, 2013, ECF No. 22 ¶¶ 1-2 (hereinafter, "Def.'s Facts")). In May 2009, WBHCS, which had been operating on a not-for-profit basis, came

under management of a new parent corporation, Community Health United Home Care (hereinafter, "CHUHC"), a for-profit operator of approximately 65 home health and hospice agencies throughout the country. (Def.'s Facts ¶¶ 1, 6, 11, 12).

The arrival of CHUHC apparently prompted the senior on-site manager of WBHCS (called the "Administrator") to resign, and Ms. Edgerton was selected as interim Administrator. (Id. ¶¶ 4, 13, 14). Prior to her selection, Ms. Edgerton was WBHCS's "Director of Home Health and Personal Care." (Id. ¶ 21).

The parties quibble about the details, but it is undisputed that by January 2010, CHUHC had developed misgivings concerning Ms. Edgerton's leadership as a result of her failure to meet revenue and patient admissions targets for WBHCS. (Id. ¶¶ 51-55, 78-83). In February 2010, Ms. Edgerton's superiors visited WBHCS and the nearby hospital (that CHUHC hoped would refer patients to WBHCS) to see what the matter was. (Id. ¶¶ 78-102).

On February 24, 2010, soon after the supervisors's visit, Ms. Edgerton was fired. (Id. ¶ 120).

Louise Baran, then age 51, was offered Ms. Edgerton's WBHCS Administrator position. (Id. ¶ 125). She accepted and agreed to a start date, but ultimately decided that she "was no longer interested in the job" and withdrew. (Baran Decl., ECF No. 34-24; Def. Ex. BB, ECF No. 34-29). June Hannon, in her

early forties at the time, was subsequently hired to replace Ms. Edgerton.

## IV. Discussion

The Court holds that Ms. Edgerton has failed to make out a prima facie case of discrimination on the basis of age. Specifically, the Court holds that Ms. Edgerton has failed to show that there is a genuine dispute regarding the fourth element of the prima facie case, which requires the plaintiff to show that she was "ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus."

Ms. Edgerton offers no evidence to dispute that Louise Baran – less than four years younger than Ms. Edgerton – was offered the WBHCS Administrator position when Ms. Edgerton was fired. Further, it is undisputed that Baran accepted the offer and agreed with WBHCS on a start date, and only later rescinded her acceptance upon further reflection. Notwithstanding semantical arguments as to who "replaced" Ms. Edgerton – Louise Baran or June Hannon – the undisputed facts do not "support an inference of discriminatory animus" on the part of WBHCS, which, after all, is what the fourth prong of the prima facie case is testing.

Ms. Edgerton argues that there "is no authority anywhere within the Third Circuit for the proposition that an offer is equivalent to replacement." (Pl. Opp'n

Br. at 14). But the Court is persuaded by authorities reasoning that, in the absence of suspect circumstances, an employer's offer to hire a replacement not substantially younger than the ADEA plaintiff undermines the plaintiff's prima facie case. See Dunphy v. Delta Airlines, Inc., 290 F. Supp. 2d 311, 316 (E.D.N.Y. 2003) (Gleeson, J.) ("Dunphy fails to establish a prima facie case of age discrimination based on Delta's decision not to promote him to Regional Manager because there is no evidence from which a rational finder of fact could draw an inference of discrimination. Indeed, the position was initially offered to another Delta employee (McGowan) who was 52 years old – only two years younger than Dunphy."); Loughnane v. Price Costco Wholesale, 1998 WL 78086, at *4 (N.D. Cal. Feb. 10, 1998) ("Although Loughnane was ultimately replaced by a substantially younger employee, any presumption of discriminatory intent is undermined by Costco's undisputed earnest desire to hire someone older than Loughnane. Loughnane has failed to establish a prima facie case of age discrimination"); Eng v. Beth Israel Med. Ctr., 1995 WL 469704, at *2-*3 (S.D.N.Y. Aug. 7, 1995) ("The uncontroverted circumstances surrounding [the not significantly younger person's] recruitment, hiring, resignation, and the subsequent promotion of [a significantly younger person to replace plaintiff would not] allow a rational trier of fact to form an inference of age discrimination."). See

11

also Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1099 (9th Cir. 2005) ("Andreassen . . . appointed a Norwegian-born person (Knotten) as master. Coghlan argues that this is further evidence of pro-Norwegian bias. It is virtually impossible to credit Coghlan's argument, however, because Andreassen first offered the newly vacant master position to an American of non-Norwegian heritage (Kraljevich). . . . [W]e cannot see how any reasonable jury could conclude that Andreassen was motivated by pro-Norwegian or anti-American discrimination when his first choice was to replace a Scandinavian master with an American one.").

As one might expect, Ms. Edgerton argues that the circumstances surrounding the offer of employment to Ms. Baran are suspicious. First, she argues that WBHCS's offer to Ms. Baran was a sham because WBHCS should have anticipated that Baran would reject the offer of employment. After all, WBHCS's offer came out of the blue and Ms. Baran had already rejected a previous offer of an Administrator's position at another CHUHC site. (Pl. Opp'n Br. at 14-15). Second, Ms. Edgerton argues that she was treated less favorably than the substantially younger June Hannon, Ms. Edgerton's replacement once Ms. Baran rescinded her agreement to become WBHCS's Administrator. In particular, Ms. Edgerton asserts that she was denied the aid of an assistant experienced in

increasing admissions, whereas Ms. Hannon was given the help of an "experienced sales and marketing representative." (Id. at 16). In addition, asserts Ms. Edgerton, when Ms. Hannon's performance as Administrator was found wanting because she fell behind in filing billing audits, she (Hannon) was given the benefit of WBHCS's progressive discipline policy, whereas Ms. Edgerton was not. (Id. at 17-18).

The Court is not persuaded.[2] First, Ms. Baran was not only offered the WBHCS Administrator position; she initially accepted the position and agreed with WBHCS on a start date of April 5, 2010. WBHCS's Regional Operations Director, Melissa Torrance, sent Ms. Baran employment forms to fill out. (Def. Ex. BB, ECF No. 34-29). Ms. Torrance asked a subordinate to "send [Baran] for the drug screen and initiate her background checks." (Id.). Only by allowing its deliberations to descend into conspiratorial speculation could a jury find that all of this was a WBHCS-orchestrated charade intended to install the relatively young Ms. Hannon as Administrator.

Second, the comparison between WBHCS's treatment of Ms. Edgerton and her successor Ms. Hannon fails to put the good faith of WBHCS's offer of

---

[2]Ms. Edgerton makes two additional arguments that are even less persuasive, and the Court does not address them.

employment to Ms. Baran in doubt. The comparison is indicative of discriminatory animus on the part of WBHCS only if one assumes that WBHCS would have treated Ms. Edgerton's contemporary, Ms. Baran – had Ms. Baran, as planned, become WBHCS's Administrator instead of Ms. Hannon – worse than it treated Ms. Hannon. But there is no reason to make this assumption in the absence of other evidence showing that the offer to hire Ms. Baran was, in the first place, purely a ruse to conceal favoritism towards a younger employee, Ms. Hannon, and there is no such evidence. In other words, to argue from the Edgerton/Hannon comparison that WBHCS's offer to Ms. Baran was suspect is to assume the conclusion, not support it.

Ultimately, Ms. Edgerton fails to put the good faith of WBHCS's offer of employment to a not substantially younger person, Ms. Baran, in doubt. Accordingly, she has failed to make out her prima facie case of discrimination on the basis of age. The parties have offered arguments concerning other aspects of the McDonnell-Douglas framework, namely whether Ms. Edgerton can show that WBHCS's stated reasons for terminating her were pretextual, but the Court does not consider them. Since Ms. Edgerton's evidence fails to permit the inference that WBHCS fired Ms. Edgerton for discriminatory reasons, the Court has no cause to inquire of WBHCS whether it actually fired Ms. Edgerton for another reason or no

reason at all, and need not concern itself with the integrity of the answer.

## V.     Conclusion

For the foregoing reasons, the motion for summary judgment of defendant Wilkes-Barre Home Care Services is granted, in accordance with the accompanying Order of this date.

BY THE COURT:

s/Matthew W. Brann
Matthew W. Brann
United States District Judge